## Richmond

JAMES WARREN SCOTT

v.

COMMONWEALTH OF VIRGINIA

No. 0278-85

Argued October 17, 1985

Decided February 18, 1986

COUNSEL

Patrick M. Crowling, Jr. (Cabell, Paris, Lowenstein & Bareford, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—In this appeal by James Warren Scott we consider whether a prospective juror's employment by the establishment

where the offense occurred constitutes grounds for disqualification of the juror "for cause." Scott argues that we should adopt a *per se* rule that would disqualify a prospective juror under these circumstances. Alternatively, Scott contends that, even if the juror was not *per se* disqualified, the record demonstrates that the juror was not questioned sufficiently to determine his qualifications for serving on the jury. We reject both contentions and affirm the conviction.

Scott was indicted for the robbery of a cashier at the Ukrops Supermarket in Chester. The court examined the venire in accordance with Rule 3A:14. One juror, Mr. Henderson, responded affirmatively to the court's question: "Are any of you officers, directors, stockholders, agents or employees of Ukrops?" The voir dire of Henderson continued:

THE COURT: What is your affiliation?

A JUROR: I work as the morning man with Ukrops. I just work in the store, the morning man.

THE COURT: All right, do you think that your employment with Ukrops would in any way affect your ability to give this defendant a fair and impartial trial on this case today?

A JUROR: I don't think so, but—I—I don't believe it would.

THE COURT: I'll let you pursue that further in just a minute.

It is not clear from the record to whom the court's last remark was directed.

The voir dire continued until the court completed the inquiries required by Rule 3A:14. Scott's trial counsel then asked:

Would any of y'all have difficulty if you shopped—do any of you shop at Ukrops? I realize that is probably most of y'all. Would you have any difficulty in finding for [Scott] considering your relationship to Ukrops, if the facts of the case should show that he was not the person involved in this

robbery?

The members of the venire responded negatively. In response to further questions to the venire by Scott's trial counsel, Henderson also indicated that he previously had served on a jury and had been a victim of "a home robbery." Counsel moved to strike Henderson because of his connection with Ukrops.

The court then examined Henderson:

Q I previously asked you about the first question you answered. The second one I want to ask you about is the fact that you've served on a jury. Obviously, that is no ground for not serving on this one. The fact that your home was—you said a home robbery. Do you mean a robbery?

A Yes, sir, I was robbed.

Q Was anybody there?

A No, I had no contact with the perpetrator.

Q That is a burglary. I don't mean to get technical with you. You weren't robbed.

A I was burglarized.

Q Okay, fine. Does the fact that your home was burglarized—do you think that in any way will affect your ability to give this defendant a fair trial—

A I don't think so.

Q —based on the law and the evidence in this case? Can you sit here and hear this case and not let that affect your judgment?

A It wouldn't affect it.

THE COURT: I'm not going to strike for cause. I think just the mere fact that he might make a better juror than some of the others. Who knows? I'm not going to strike him for cause.

■ Henderson was removed from the panel by peremptory challenge. The removal by peremptory challenge is irrelevant to our decision if the court erred in refusing to strike him for cause.

*L.E. Briley* v. *Commonwealth*, 222 Va. 180, 181 n.1, 279 S.E.2d 151, 152 n.1 (1981). "[I]t is prejudicial error . . . to force a defendant to use the peremptory strike . . . to exclude a venireman who is not free from exception." *Justus* v. *Commonwealth*, 220 Va. 971, 975, 266 S.E.2d 87, 90 (1980).

■■■■ "[A]n accused is entitled to an impartial jury as a matter of constitutional guarantee, reenforced by legislative mandate and by the Rules of . . . court." *Martin* v. *Commonwealth*, 221 Va. 436, 444, 271 S.E.2d 123, 128 (1980) (footnotes omitted); *Breeden* v. *Commonwealth*, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976). It is the court's duty to procure an impartial jury. *Salina* v. *Commonwealth*, 217 Va. 92, 93, 225 S.E.2d 199, 200 (1976). The court's fulfillment of this duty, however, involves the exercise of sound judicial discretion. *Calhoun* v. *Commonwealth*, 226 Va. 256, 258, 307 S.E.2d 896, 898 (1983); *Martin*, 221 Va. at 445, 271 S.E.2d at 129. The court's duty, in the exercise of its discretion, is to empanel jurors who are free from bias or prejudice against the parties and who "stand indifferent in the cause." *Breeden*, 217 Va. at 298, 227 S.E.2d at 735.

■■■■ Code § 8.01-358, which is made applicable to criminal proceedings by Code § 19.2-260, provides for voir dire of a perspective juror "to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein[.]" Notwithstanding the trial court's powers and responsibilities in procuring an impartial jury, the Supreme Court has held that in certain cases a prospective juror should be disqualified due to a relationship with a party of record or a victim in a criminal prosecution.

For example, in *Gray* v. *Commonwealth*, 226 Va. 591, 593, 311 S.E.2d 409, 410 (1984), the Court held that a venireman related within the ninth degree of affinity to the victim of a crime is *per se* disqualified from serving on the jury panel. The Court founded its decision on the common-law rule disqualifying a venireman who is "related by blood or marriage to . . . a victim in a criminal prosecution." The Court held that "the potential for prejudice is inherent and the law conclusively presumes partiality." *Id.* at 594, 311 S.E.2d at 410.

In *Salina* v. *Commonwealth*, 217 Va. 92, 94, 225 S.E.2d 199, 200-01 (1976), the Court held that veniremen owning stock in a

bank against which the offense was committed were disqualified from jury service. The Court concluded that the reasons for the disqualification on the ground of consanguinity "apply with even greater force where . . . the criminal act suffered by the corporation [*i.e.* the banks] has the direct effect of diminishing the assets of the corporation held for the benefit of its stockholders." *Id.*

In both *Gray* and *Salina* the challenged jurors did not otherwise manifest any bias or prejudice. Each case rested squarely on the presumption of bias or prejudice inherent in the relationships. *See Gray*, 226 Va. at 594, 311 S.E.2d at 409-10; *Salina*, 217 Va. at 92-94, 225 S.E.2d at 199-200.

▌*Per se* disqualifications are few in number and disfavored. The Supreme Court on several occasions has rejected either expressly or by clear implication the application of a *per se* rule. *See, e.g., Watkins* v. *Commonwealth*, 229 Va. 469, 480, 331 S.E.2d 422, 431-32 (1985) (several veniremen sitting on other murder trials at same term of court); *Elam* v. *Commonwealth*, 229 Va. 113, 116, 326 S.E.2d 685, 687 (1985) (sister of former Commonwealth's Attorney and former clients of incumbent Commonwealth's Attorney); *Calhoun* v. *Commonwealth*, 226 Va. 256, 263, 307 S.E.2d 896, 900 (1983) (veniremen for whom Commonwealth's Attorney had been counsel in civil case and drafted will); *Melvin* v. *Commonwealth*, 202 Va. 511, 512-13, 118 S.E.2d 679, 680 (1961) (in a trial for larceny of oysters, no error in refusing to question veniremen as to whether any owned, leased or operated oyster grounds); *Waller* v. *Commonwealth*, 178 Va. 294, 304-05, 16 S.E.2d 808, 812, *cert. denied*, 316 U.S. 679 (1949) (in murder of farmer by sharecropper, no prejudice presumed in veniremen who were farmers).

▌We believe a *per se* rule is unwarranted in this case. We recognize that a prospective juror employed by the victim of a crime may face overt or subtle influences on his capacity to hear the evidence and render judgment fairly and impartially. *Cf. Dennis* v. *United States*, 339 U.S. 162, 172 (1950); *id.* at 179-80 (Black, J., dissenting); *Smith* v. *Phillips*, 455 U.S. 209, 228-31 (1982) (Marshall, J., dissenting); *United States* v. *Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977). We conclude, however, that Henderson's employment by Ukrops, without more, should not lead us to impute a bias to him which is not disclosed by the record. We hold, therefore, that **Henderson's employment does not constitute**

*per se* the "interest in the cause" prohibited by Code § 8.01-358.

Significantly, in *State* v. *Wilcox*, 286 S.E.2d 257 (W. Va. 1982), one of the cases upon which Scott relies, the West Virginia court did not apply a *per se* rule. There, two veniremen were employees of the victim's *brother* and the court stated:

> Although we are of opinion that the trial court would not have abused its discretion by striking the two prospective jurors . . . we conclude that the trial court did not commit error by refusing to strike the jurors for cause. The defense did not attempt to question those jurors to determine to what extent the employer-employee relationship might have influenced them, and there is no evidence indicating that they had any bias or prejudice toward the accused.

286 S.E.2d at 259.

The quoted statement of the West Virginia court addresses Scott's second contention, that the trial court abused its discretion in failing to examine Henderson at length regarding his employment. As noted above, it is the duty of the court to procure an impartial jury. Consistent with this duty, the trial courts of Virginia conduct the examination of the venire, including the mandatory seven questions set out in Rule 3A:14. The trial court's responsibility in the matter of the venire, however, does not exclude the participation of counsel. Code § 8.01-358; Rule 3A:14(a).

Indeed, the court invited counsel to "question the jurors." Although Scott's trial counsel asked whether the fact that veniremen shopped at Ukrops would affect their judgment, he did not pursue Henderson's employment relationship. The record does not disclose whether, in fact, Henderson was employed at the store where the robbery occurred, whether he had acquired information about the crime through his employment, or whether he was acquainted with the Ukrops' clerk who was robbed. We can only speculate as to whether this line of inquiry would have disclosed any bias or prejudice on Henderson's part.

The trial court examined Henderson twice as to his employment and experience as the victim of a crime. The court was satisfied that he would render a fair and impartial verdict. While it may

have been more prudent for the trial court to have removed Henderson, on the record before us we cannot say that the court abused its discretion or that its decision is manifestly wrong. The conviction, therefore, must be affirmed.

*Affirmed*

Koontz, C.J., and Keenan, J., concurred.