## Salem

### FRANK PAULDING SCOTT

v.

### COMMONWEALTH OF VIRGINIA

No. 1172-86-3

Decided October 4, 1988

254

COUNSEL

Harry F. Hambrick, Jr. for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Frank Paulding Scott was convicted in a jury trial of first degree murder, two counts of attempted robbery and use of a firearm in the commission of murder. In accordance with the jury's verdicts, Scott was sentenced to life imprisonment for murder, ten years imprisonment for each attempted robbery and two years imprisonment for the use of a firearm in the commission of murder. On appeal, Scott raises the following issues: (1) whether the trial court abused its discretion in restricting voir dire; (2) whether the trial court erred in ruling that his abandoned notice of alibi was admissible for impeachment; (3) whether the trial court erred in restricting counsel's attempted impeachment of a prosecution witness by proof of prior inconsistent statements; (4) whether the trial court erred in refusing Scott's discovery request to review the juvenile court records of a prosecution witness; (5) whether the conviction of, or punishment for, the attempted robbery of Bonnie Flett constituted double jeopardy; and (6) whether the evidence was sufficient to support the conviction of attempted robbery of Bonnie Flett. For the reasons that follow, we find no reversible error in the first five issues; however, we reverse Scott's conviction of attempted robbery of Bonnie Flett because the evidence was insufficient to support his conviction.

I.

The evidence at trial established that on the evening of July 11, 1985, Scott, D'Anthony Hale and Ronald Keeling decided to rob the Arby's restaurant located on Brandon Avenue in the City of Roanoke. Scott had previously worked at this Arby's and he suggested that they could "snatch" the night deposit bag when the

manager left with it at the close of the business day.

The three drove to a service station near the Arby's and while Keeling waited in his car, Scott and Hale proceeded to the rear of Arby's and waited for the departure of the manager. Within several minutes, Bonnie Flett, a summer employee, and Jerry Horne, the manager, exited Arby's, crossed the rear parking lot and dumped garbage in the dumpster. Flett and Horne turned and were returning to the employee entrance when Flett saw two men moving toward them. Flett screamed, "Run, Jerry, run." As she reached the employee entrance one of the men grabbed her from behind and pulled her to the ground. Flett testified that after she said, "Let me go," her assailant did so and that he immediately went to where the other assailant was struggling with Horne. She heard a voice say, "Shoot him, shoot him," and within seconds she heard more than one gunshot. Flett turned and saw Horne lying wounded on the ground and the two assailants running away. Flett was not able to identify the two assailants. Horne died several hours later from a gunshot wound to his neck.

Hale and Keeling both testified for the Commonwealth. Hale testified that Scott had suggested the plan to "snatch" the night deposit bag from the manager. He testified that he and Scott were the two men seen by Flett as she and Horne were returning to the employee entrance of Arby's. He further testified that Scott tried to hit Horne but that Horne "just swinged [sic] him down." After Hale and Flett "collided," Horne grabbed Hale in a "bear hug" from behind. Seconds later Scott pulled a gun from his jacket pocket and shot Horne. Hale and Scott then ran to Keeling's car and made their escape.

Keeling's testimony confirmed the robbery plan and that he had been the driver of the car involved. He was not present at the scene of the robbery. Scott did not testify.

## II.

Scott submitted thirty proposed *voir dire* questions and the trial court, for reasons stated in the record, refused twenty of these. We conclude that the trial court did not abuse its discretion in restricting the proposed *voir dire* questions. The record affirmatively supports the conclusion that the mandates of Code § 8.01-358 and Rule 3A:14 were followed; thus, we will not recite the

twenty questions which were rejected by the trial court.

 Scott essentially asserts that some of the proposed questions were intended to test the jurors' understanding and willingness to accept fundamental law, and whether the jurors had formed an opinion concerning Scott's guilt or innocence as a result of pretrial news media coverage of this case. The trial judge conducted *voir dire* sessions with prospective jurors in groups of three and the record affirmatively establishes that the rejected questions were either adequately covered by other granted questions or questions propounded by the court.

> The questions propounded by counsel must be relevant . . . and the trial court must, in its discretion, decide the issue of relevancy, subject to review for abuse. The test of relevancy is whether the questions relate to any of the four criteria set forth in [Code § 8.01-358]. If an answer to the question would necessarily disclose, or clearly lead to the disclosure of the statutory factors of relationship, interest, opinion or prejudice, it must be permitted. Questions which go beyond this standard are entirely within the trial court's discretion.

> A party has no right, statutory or otherwise, to propound any question he wishes, or to extend *voir dire* questioning *ad infinitum*. The court must offer a party a full and fair opportunity to ascertain whether prospective jurors "stand indifferent in the cause," but the trial judge retains the discretion to determine when the parties have had sufficient opportunity to do so.

*LeVasseur v. Commonwealth*, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983), *cert. denied*, 464 U.S. 1063 (1984)(citations omitted); *see also Scott v. Commonwealth*, 1 Va. App. 447, 451, 339 S.E.2d 899, 901 (1986), *aff'd*, 233 Va. 5 (1987). We conclude from our review of the record that the trial court did not abuse its discretion because the relevant questions which Scott proposed were either permitted or were adequately covered by other questions to the jurors. Scott was therefore afforded a full and fair opportunity to ascertain whether the prospective jurors stood indifferent in the cause.

## III.

During the pretrial proceedings, counsel for Scott filed a notice of alibi, asserting that he intended to establish that Scott was in Washington D.C. when the offenses occurred. Subsequently, counsel advised the court that he had "abandoned" this alibi and substituted oral notice that he intended to establish that Scott was with his girlfriend when the offenses occurred. At a hearing on a motion in limine, Scott's counsel raised the issue whether the Commonwealth would be permitted to impeach Scott by evidence of the first alibi if Scott elected to testify. At the conclusion of the Commonwealth's evidence, the court ruled that if Scott testified the Commonwealth would be permitted, for impeachment purposes, to cross-examine him on his abandoned alibi defense. Counsel for Scott made no objection to this ruling. Consequently, Scott is not permitted to raise this issue for the first time on appeal. Rule 5A:18. While Scott did not testify, we note that on appeal he does not assert that this ruling on the impeachment use of his abandoned alibi defense was the reason for his election not to testify. Furthermore, we note that any harm resulting from the trial court's decision to allow the use of the abandoned alibi defense is speculative and since Scott did not testify, he is not entitled to have the court's decision reviewed. *See Reed v. Commonwealth*, 6 Va. App. 65, 69, 366 S.E.2d 274, 277 (1988)(citing *Luce v. United States*, 469 U.S. 38, 42-43 (1984)).

## IV.

Prior to trial, witnesses Hale and Keeling gave several statements to the investigating officers which admittedly were inconsistent with their trial testimony. These statements were transcribed and provided to Scott's counsel. At trial, counsel attempted to attack the credibility of these witnesses during cross-examination by using their prior inconsistent statements.

Counsel desired to "paraphrase" the questions and answers contained in these statements during cross-examination in order to "direct the cross-examination to the precise point" in the prior inconsistent statements. The trial court required counsel to read verbatim the question and the corresponding answer when confronting witnesses with their prior inconsistent statements. When the witness admitted making the prior inconsistent statement, the

witness was permitted to explain the inconsistency. The explanation was repeatedly that the witness had lied to deceive investigating officers.

Scott contends that without being permitted to paraphrase the prior statements, cross-examination was rendered ineffective because the inconsistencies which he wanted to pinpoint were often "buried in the middle of a response" and were not responsive to specific questions, such as those asked by the Commonwealth's Attorney at trial. We find no merit to Scott's assertion that the trial court committed reversible error by requiring a verbatim reading of the questions and answers given by witnesses in prior statements.

■ Initially we agree with the Commonwealth that it was possible for Scott's counsel to extract specific questions and answers for purposes of cross-examination, consistent with the court's ruling in that regard. In addition, neither Code § 19.2-268.1 nor the Supreme Court's decision in *Patterson v. Commonwealth*, 222 Va. 612, 283 S.E.2d 190 (1981), support Scott's contention that he should have been permitted to paraphrase the prior statements. Code § 19.2-268.1, in plain language, permits the cross-examination of a witness in a criminal case based on a prior written statement by the witness. This statute provides that if the witness denies making the prior statement, it shall then be shown to him and if he admits its genuineness, he shall be allowed to make his own explanation of it. The witnesses in this case admitted making the prior statements and explained that they were not truthful when made. In *Patterson*, the Court held that counsel, when asking a witness whether he or she previously made a particular statement, is permitted "to frame the question by reading the statement from a transcript of a prior proceeding." *Id.* at 616, 283 S.E.2d at 193 (emphasis deleted). The trial court's ruling was consistent with *Patterson*. Contrary to Scott's contention, we find nothing in *Patterson* supporting the position that he should have been permitted to paraphrase the questions and answers contained in the witnesses' prior statements. Accordingly, we hold that the trial court's ruling on this issue was consistent with the requirements of Code § 19.2-268.1 and with an orderly procedure calculated to avoid confusion for the witnesses and the jury, and it was well within the court's discretion to control the conduct of cross-examination. *See Watkins v. Commonwealth*, 229 Va. 469, 484, 331

S.E.2d 422, 433 (1985), *cert. denied,* 275 U.S. 1099 (1986).

## V.

Prior to trial, counsel for Scott filed a motion for discovery in which he requested, *inter alia,* "a copy of the criminal record of all potential witnesses as to all charges against [Scott]." One of those witnesses was the co-defendant D'Anthony Hale. Hale was an adult, eighteen years of age, at the time of the offense and nineteen years of age at the time his motion was filed. At a hearing on this motion, counsel for Scott specifically requested permission "as an office of the court" to review the juvenile court records of Hale. The trial court denied counsel's request and directed the Commonwealth to provide counsel with the record of guilty findings of felonies or crimes of moral turpitude in Hale's record. The Commonwealth subsequently provided counsel Hale's complete record, which disclosed juvenile assault adjudications against Hale. Thereafter, counsel for Scott filed a motion in limine in which he sought permission to "question, by way of impeachment" the witness Hale using these juvenile assault adjudications. Counsel asserted that these adjudications "are analogous to misdemeanors of moral turpitude and show a predisposition to commit an act of violence." The trial court responded: "I don't believe . . . your request can be granted at this time."

At trial, Hale, then age twenty, admitted prior adult convictions of statutory burglary and grand larceny. Counsel for Scott made no specific reference to Hale's juvenile record during cross-examination. Hale further admitted that he had pled guilty to and was convicted of murder, attempted robbery and use of a firearm in the commission of murder for the same offenses for which Scott was on trial. While he had not been sentenced for these offenses, Hale testified that he had been advised that the Commonwealth would recommend that he receive a sentence of life imprisonment regardless of his testimony in the Scott trial.

In this context, Scott asserts that he should have been permitted to review Hale's juvenile court record rather than being limited to the procedure adopted by the trial court which directed the Commonwealth to review the record and disclose to him convictions of felonies and crimes of moral turpitude. Scott asserts that these procedural facts present a conflict between the state's policy inter-

est of protecting juvenile records as embodied in Code § 16.1-305 (providing for confidentiality of juvenile court records) and his right to effective cross-examination under the confrontation clause of the Sixth Amendment of the United States Constitution.

■ Scott relies primarily on *Davis v. Alaska*, 415 U.S. 308 (1974) and *Fulcher v. Commonwealth*, 226 Va. 96, 306 S.E.2d 874 (1983). Scott's reliance on these cases is misplaced. In *Davis*, the Supreme Court held that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination *for bias* of an adverse witness." *Davis*, 415 U.S. at 320 (emphasis added). The Court in *Davis* clearly distinguished the introduction of evidence of a prior crime, a general attack on the credibility of a witness, from the introduction of evidence to show bias, prejudice or ulterior motive, a specific attack on the credibility of a witness.

In *Fulcher*, the Virginia Supreme Court, citing *Davis*, stated, without deciding the issue, that it would be error to restrict cross-examination to show bias by reference to juvenile charges still pending against the witness because that amounts to a specific attack, rather than a general attack, on the credibility of the witness. 226 Va. at 99, 306 S.E.2d at 876. The *Fulcher* Court referred without comment to its prior decision in *Kiracofe v. Commonwealth*, 198 Va. 833, 97 S.E.2d 14 (1957), where it held that refusal to permit cross-examination of a witness to show prior juvenile felony adjudication, a general attack on credibility, is proper.

In his motion for discovery, Scott sought Hale's "criminal record;" he received Hale's complete record including his prior juvenile assault adjudications. Subsequently, he sought permission to impeach Hale on cross-examination by referring to those juvenile adjudications which he asserted were, like misdemeanors involving moral turpitude, permissible grounds for impeachment. We conclude that Scott's reliance on *Davis* and *Fulcher* is misplaced because he was not attacking Hale's credibility on the grounds of bias. He was, rather, seeking to mount a general attack on his credibility by showing prior juvenile adjudications. Furthermore, as the Commonwealth noted, the right to cross-examination is a trial right; Scott, however, in fact did not assert that right by questioning Hale at trial concerning his juvenile assault adjudica-

tions, even though that evidence had been provided to him by the Commonwealth prior to trial and the trial court had not made a final ruling on its admissibility. For these reasons, we are not properly presented with the broad issue asserted by Scott on brief of where the line should be drawn between the state's policy interest in protecting the confidentiality of a juvenile offender's record embodied in Code § 16.1-305 and the constitutional right to effective cross-examination of such an adverse witness.

In *Pennsylvania v. Richie*, 480 U.S. 39 (1987) the Supreme Court was presented factual circumstances which raised an issue more closely related to the broad issue asserted by Scott on brief in the present case. There, a father was charged with sexual offenses against his minor daughter and sought to subpoena the records of the protective service agency that had investigated these offenses and prior allegations of child abuse of her. The father hoped to find in those records a medical report, names of witnesses, and other unspecified exculpatory evidence. The agency refused to comply with the subpoena, claiming its records were confidential under a statute similar to Code § 16.1-305. The father contended that to deny him access to these records would deny his constitutional right to effective cross-examination. The Supreme Court held that the father had a due process, rather than a confrontation, right to have the records of the agency turned over to the trial court for in-chambers review and release to him of material information for his defense. The Court further held that this right was limited to a review by the trial court and did not include and extend to a review by counsel for the father. Thus, a balance was reached between the accused's rights and the state's interest in protecting confidential records.

Unlike the circumstances in *Richie*, counsel for Scott sought the "criminal record" of Hale including his prior juvenile adjudications. Unlike the circumstances in *Richie*, Scott did not assert that Hale's prior juvenile adjudications or his prior adult convictions in any way involved Scott. Thus bias, prejudice or ulterior motive was not asserted and consequently justification for a review of the actual files of the juvenile court documenting those adjudications was not asserted. Scott received a list of those adjudications just as he received a list of Hale's adult convictions. He was fully advised of the recommendation for sentencing the Commonwealth would make concerning Hale's participation in the pending

charges. We believe no more was required.

Accordingly, we hold only that on these facts the trial court did not err in adopting the procedure of requiring the Commonwealth to provide Hale's record of prior convictions which included his juvenile record.

## VI.

Finally, we turn to Scott's challenge to his conviction of the attempted robbery of Bonnie Flett. He argues that his conviction was barred by the double jeopardy guarantee and that the evidence was insufficient.

In the context of his double jeopardy argument, Scott essentially contends that assuming an intent to rob was established by the Commonwealth's witnesses, that intent was to rob the manager or the one employee who happened to have possession of the daily proceeds of Arby's Restaurant; and thus there was only one attempted robbery rather than two. While not specifically stated, we assume that Scott contends for purposes of his double jeopardy claim that he has received multiple punishments for a single criminal act.

In *Jordan v. Commonwealth*, 2 Va. App. 590, 347 S.E.2d 152 (1986), we held: "Because the essential character of both Code § 18.2-58 and common-law robbery is violence against a person for the purpose of theft, . . . the appropriate 'unit of prosecution' is determined by the number of persons from whose possession property is taken separately by force or intimidation." *Id.* at 596, 347 S.E.2d at 156 (citation omitted). In *Jordan*, this Court found no double jeopardy bar where the Commonwealth's evidence showed that the defendant pointed a gun at two employees and obtained money belonging to their joint employer from each of them. We rejected the defendant's contention on those facts that only one robbery had occurred. In the context of a double jeopardy claim, we believe that the reasoning in *Jordan* is equally applicable to attempted robbery. Thus, we hold that where the facts establish an intent to rob either or both of two employees, and overt acts to accomplish that intent are inflicted on each of them, two separate attempts have occurred rather than one, even though the money sought belonged solely to their employer. Accordingly, under such facts, the imposition of separate

sentences would not constitute multiple punishment for the "same offense."

■ Scott's challenge to the sufficiency of the evidence for his conviction of attempted robbery of Bonnie Flett is not resolved by our holding that no double jeopardy bar exists in this case. Under familiar principles, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The jury's verdict will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. *See Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987); *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985); Code § 8.01-680.

■ "[A]n attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act toward [sic] its consummation which is more than mere preparation but falls short of execution of the ultimate purpose." *Sizemore v. Commonwealth*, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). The Court also noted in *Sizemore* that "the question of what constitutes an attempt is often intricate and difficult to determine, and . . . no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts." *Id.* at 985, 243 S.E.2d at 215. The evidence in this case clearly establishes that Scott and Hale intended to "snatch" the night deposit bag containing the daily receipts of the Arby's Restaurant. Because Scott had previously been employed there he knew that the manager would customarily exit with the deposit bag. It was therefore a reasonable inference for the jury to conclude that Scott intended to rob the manager when he exited Arby's on this particular night and in fact Scott does not contest that in this appeal. It also is a reasonable inference that Scott's intent to rob was not limited to the manager but rather extended logically to any employee of Arby's in possession of the deposit bag at that particular time. Thus, had only one employee exited Arby's at that particular time, Scott's intent to rob and the act of assaulting that person would have constituted the attempt to rob.

The difficulty in this case, however, is that two employees exited Arby's and one was known by the robbers to be the manager. Thus, the reasonable inference is that the intent to rob focused entirely on the manager rather than on the other employee. In

order to support the inference suggested by the Commonwealth that the intent to rob was not limited to the manager, the facts must exist to support a reasonable inference that the intent to rob extended to and included Flett. Flett's testimony in this regard is particularly critical. She testified that when her assailant grabbed and pulled her down, he immediately let her go when she exclaimed, "Let me go." The evidence indicates that this assailant was Hale. Flett further testified that "they never did make any sort of actual attempt to get any money other than coming up towards us." We must view that statement, not in the context of the actions taken against the manager, Horne, but specifically in the context of the actions taken against Flett. When coupled with the established intent to rob the manager, Horne, and the struggle between Horne and Scott occurring simultaneously, the act of grabbing Flett does not support an inference that there was an intent also to rob her or that the grabbing of her was an act intended to consummate a robbery of her. Her immediate release under circumstances in which she had been subdued contradicts such a conclusion. In addition, contrary to the assertion of the Commonwealth, the rationale of *Jordan* does not support a conclusion that two attempted robberies occurred in this case. In *Jordan* it was clear that there was an intent to rob coupled with an actual theft of money belonging to their employer from two employees. Here, the intent proved by the Commonwealth's evidence was the intent to rob Horne. Hale's act of grabbing Flett does not support an inference that this intent was somehow extended to Flett because she may have possessed some of her employer's money. In short, the evidence failed to establish that when Hale grabbed Flett he intended to take something of value from her rather than merely to prevent her from escaping or assisting Horne while the intended robbery of Horne which had commenced was consumated. Accordingly, Scott, while acting in concert with Hale, cannot be held criminally responsible for an act which did not constitute an attempted robbery.

We conclude that on the facts of this case the evidence does not support a conviction of attempted robbery of Flett. Accordingly, we reverse that conviction.

*Affirmed in part,*
*reversed in part.*

Keenan, J., concurred.

Coleman, J., concurring in part and dissenting in part,

While I concur with all rulings of the majority except that the evidence is insufficient to support Scott's conviction of attempted robbery of Bonnie Flett, I am unable to agree with some reasons assigned for the majority's conclusions.

First, in Part V, I agree that the trial court did not err in ruling upon Scott's discovery request for "a copy of [Hale's] criminal record" when it directed that the Commonwealth's attorney provide Hale's record of prior criminal convictions, including juvenile adjudications of "not innocent." Scott's discovery request was expanded by an oral motion at the discovery hearing to permit defense counsel to personally review Hale's juvenile records. Although the request might be construed to seek more than criminal convictions, Scott does not contend that the "criminal record" he requested involved anything other than Hale's record of criminal convictions or the juvenile adjudications which the Commonwealth provided. Although on brief appellant states that permitting counsel access to juvenile records would be a "better rule . . . to determine the existence of any potential impeachment evidence," he does not contend that he was not provided with the requested "criminal record." Thus, Scott's sole complaint is that the procedure utilized by the trial court to obtain the requested discovery was not the best possible procedure. I agree that the procedure was within the discretion of the trial court, that the procedure was one of several avenues available to the trial court, and there is nothing of record to indicate abuse of discretion in the procedure utilized. There is no suggestion that all requested discoverable material was not provided.

Although the majority concludes that the procedure was proper, the majority opinion unnecessarily indulges in an analysis of why records of apparently nonexistent juvenile adjudications would be inadmissible evidence at trial as general impeachment evidence. The majority engages in this exercise apparently to enable it to rule that even if other adjudications could have been discovered had counsel been permitted to inspect the record, such adjudications would nevertheless have been inadmissible under the *Davis v. Alaska* and *Fulcher v. Commonwealth* analysis. Because I fail to see any issue relating to admissibility of evidence before us, I would merely hold that the trial court did not err in the procedure utilized to provide the discovery.

Had the appellant presented a due process challenge that discoverable evidence was withheld in violation of *United States v. Agurs*, 427 U.S. 97 (1976), or *Brady v. Maryland*, 373 U.S. 83 (1963), or made a due process argument that the procedure did not enable the accused to obtain specific evidence, *see Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), an inquiry into the materiality of the evidence, not the admissibility, would be appropriate. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). However, no due process challenge was raised.

Second, in regard to Scott's conviction of attempted robbery of Bonnie Flett, I dissent from the majority holding and would rule that the evidence was sufficient to support the conviction. "[W]hat inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified." *Higginbotham v. Commonwealth*, 216 Va. 349, 353, 218 S.E.2d 534, 537 (1975) (quoting *LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)). We are constrained to affirm Scott's attempted robbery conviction unless it is plainly wrong or without evidence to support it. Code § 8.01-680; *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985). In ruling that the robbers had no intent to rob Bonnie Flett, I believe the majority substitutes its view for a reasonable inference that the jury was entitled to draw. The majority discusses the conclusion which it deems *most* reasonable but fails to address whether the jury's conclusion that Scott and Hale intended to rob Flett was reasonable and therefore sufficient.

The jury concluded that Scott and/or Hale intended to rob Flett. The circumstances support that deduction. The specific intent to commit a theft from the victim is a necessary element of attempted robbery. However, robbery is denominated as a crime against the person, not a property crime. *Jordan v. Commonwealth*, 2 Va. App. 590, 596, 347 S.E.2d 152, 156 (1986). Thus, an attempt to rob a person who has nothing of value is still an attempted robbery. The gravamen of the offense consists of "violence *to the person*" or "putting a *person* in fear," robbery or an attempt to commit robbery is more than aggravated larceny. *Id.* at 596, 347 S.E.2d at 155. However, mere violence against a person without the specific intent to take property from the actual or constructive possession of the victim is not robbery or attempted robbery. *See Patterson v. Commonwealth*, 222 Va. 653, 664, 283

S.E.2d 212, 219 (1981).

Viewed in the light most favorable to the Commonwealth, the evidence in this case was sufficient for the jury to conclude that the robbers laid in wait and intended to take the daily receipts from whichever employee had them, including Flett. When the two employees left the restaurant, the robbers accosted and physically assaulted both, killing the manager Horne. Violence or intimidation against either employee with an intent to take the receipts if either had them would constitute attempted robbery. The fact that the intent was conditioned upon whichever employee had the proceeds is of no consequence and does not negate an intent to rob Flett. The majority concedes: "It is also a reasonable inference that Scott's intent to rob was not limited to the manager but rather extended logically to any employee of Arby's in possession of the deposit bag at that particular time." Despite this concession, the majority concludes that the robbers did not intend to rob Flett because Hale released his hold on her, and because they knew that the manager would probably have the receipts and that Flett was not the manager. However, the jury could reasonably have concluded that Hale released her because he determined she did not have the receipts, because he changed his mind or became fearful or for other reasons which do not belie an intent to take the receipts from Flett if she had them. However, we need not speculate on why she was released. To do so diverts attention from the critical question of whether there was credible evidence from which the jury could infer an intent to rob Flett. To conclude that the facts did not permit the jury reasonably to infer that Scott intended to rob Bonnie Flett of the daily receipts if they were in her possession, in my view, impermissibly substitutes our finding of fact of Scott's intent for that of the jury.

Third, had I agreed with the majority that the evidence was insufficient to support the conviction for attempted robbery of Flett, I would have voted not to address the issue of whether the invalid conviction was barred by double jeopardy. Under the majority's holding that the evidence is insufficient to prove attempted robbery of Flett, a determination of the double jeopardy issue is not necessary. The majority opinion, in effect, holds that an invalid conviction was nevertheless not barred by another conviction on the ground of former jeopardy. However, since I disagree with the majority on the sufficiency issue, under my view the double

jeopardy challenge must be addressed. I would sustain the trial court's ruling on the claim of double jeopardy based upon *Kelsoe v. Commonwealth*, 226 Va. 197, 308 S.E.2d 104 (1983), and *Thomas v. Warden*, 683 F.2d 83 (4th Cir.), *cert. denied*, 459 U.S. 1042 (1982).