COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


RICARDO C. GREEN, S/K/A
  CHARLES RICARDO GREEN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3064-03-4            JUDGE ROSEMARIE ANNUNZIATA
                                                       JULY 12, 2005

COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              James F. Almand, Judge

            Gary H. Smith for appellant.

            Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief) for appellee.


        Ricardo C. Green appeals his conviction on April 16, 2003 for burglary in violation of Code

§ 18.2-89.  He argues the trial court erred in refusing to grant a mistrial after a juror, having been

sworn, revealed the victim's daughter had been her supervisor.  He further argues that the evidence

was insufficient as a matter of law to sustain his burglary conviction.  For the reasons that follow,

we affirm the trial court.

                                          BACKGROUND

        On appeal, we review the evidence in the light most favorable to the Commonwealth, the

party prevailing below, together with all reasonable inferences that may be drawn.  Garcia v.

Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).  So viewed, the evidence

proved that someone broke into Cynthia Chase's garage in the late hours of June 2, 2002, or

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

early morning hours of June 3, 2002. Chase recalled hearing noises between 10:00 p.m. and 11:00 p.m., and later around 1:15 a.m.

In the morning, Chase noticed a storm window had been pulled down, and several more windows showed evidence of tampering. In addition, both her front storm door and back storm door were propped open, one with a hinge and the other with a deck chair. A piece resembling a mullion from the window of the back door had been removed and was found in the backyard.

Chase also saw in the backyard broken glass, a putty knife, and glass resistors that were kept on a shelf inside the garage. The rear window of the garage had been broken, and boxes inside had been moved several feet. The garage door opens onto the backyard which is enclosed by a chain link fence; a door inside the garage opens into the family room of the house.

Officer James Houtchens investigated Chase's complaint and found that the garage door window was broken and "[t]he rear door was propped open by a chair, and some other windows as well." He also saw several items in the backyard. Detective Gilbert McCormick sought to obtain fingerprints from the broken pieces of glass, the remaining pieces still intact in the doors, and from the area around the doors. He was able to lift some latent prints from two panes of glass in the back door. McCormick testified that a "chair was propped up holding [open the] storm door" between the rear deck and the back door.

Jean Escobedo, an expert in fingerprint analysis, examined the three latent prints recovered by McCormick and compared them with Green's fingerprints. The three latent prints were of Green's right thumb, middle finger, and right index finger. Chase testified that she cleaned the windows annually in the spring, and she recalled the last time being in the spring of 2001. Chase also recalled that work was done in the backyard in June 2000. However, Green was not a member of the crew that performed the work.

Green was arrested and charged with one count of burglary pursuant to Code § 18.2-89. After the jury was empanelled to try Green, one of the seated jurors revealed that Chase's daughter had supervised the juror when she worked in the Falls Church Office of Public Works. Upon disclosure of this prior relationship, the juror was called into the courtroom, after which the following took place:

THE COURT: Would knowing the daughter affect your ability to judge this case fairly?

JURY MEMBER: Yes.

THE COURT: How would it affect your ability to judge it fairly?

JURY MEMBER: Well, I had not heard about this case before. This is the first time I heard about it.

THE COURT: Right.

JURY MEMBER: And I have not been in touch with her.

THE COURT: Well, let me ask you again, do you think you can give this a fair trial without any partisanship or –

JURY MEMBER: No partisanship whatsoever.

The defense counsel then questioned the juror who further testified that it was unlikely that she and her former supervisor would work together again, although the supervisor remained an employee of the city. The court then continued its questioning:

THE COURT: Are you comfortable trying this case?

JURY MEMBER: I'm a little bit uncomfortable.

THE COURT: What's the uncomfortableness?

JURY MEMBER: I mean, I don't remember her last name but seeing her.

Based on the juror's initiative in bringing the potential conflict to light, as well as her responses to the questions, taken as a whole, the court found the juror was able to remain impartial, and it denied Green's motion to strike the juror and declare a mistrial, stating:

[M]y impression of her was that she was exercising conscience in telling us that she suddenly recognized somebody that she should have perhaps recognized before. That person she recognized was not a witness, although related to a victim witness.

In terms of what she said, the first answer she gave was interesting. Would it affect the ability of a fair trial, and she said a very positive yes, and I re-asked the same question and it was clear what she meant, that she could do this fairly.

So she is telling us that she is exercising conscience and saying I do know the daughter of the victim. On the other hand, it doesn't cause me any -- she is a little uncomfortable about just knowing somebody.

But that isn't -- to me a test where a juror is disqualified or we get that sense that it would be preferable to have a total stranger versus this person. We did a very long, very thorough voir dire. She answered a number of questions, and everything she said struck me as being a truthful, conscientious person.

The trial judge explained he had made extensive inquiry regarding the juror's ability to be fair because he had found her initial answer ambiguous: "The words themselves caused me to re-ask . . . I wanted her to say twice what she said, because then it would have been utterly clear. It wasn't yes I can't be fair or yes these things will affect me."

Trial proceeded, and the jury convicted Green of burglary and sentenced him to ten years' imprisonment, two of which the trial court suspended. This appeal followed.

ISSUE I: THE CONTESTED JUROR

Green contends "had the juror's relationship with the victim's daughter been revealed prior to the jury being sworn, the juror should have been struck for cause." He also argues that the trial court improperly denied his motion for a mistrial on the grounds that Chase's daughter had, at one time, supervised the juror at work and that the juror's answers to the *voir dire* conducted by the trial court indicated an inability to remain impartial during the trial. We disagree.

- 4 -

Strike for Cause

A trial court's determination of a prospective juror's ability to be impartial is a matter

involving the exercise of discretion.  Green v. Commonwealth, 262 Va. 105, 115, 546 S.E.2d

446, 451 (2001).  As such, the decision is subject to deferential review on appeal.

> On appellate review, [the reviewing court] must give deference to
> the circuit court's determination whether to exclude a prospective
> juror because that court was able to see and hear each member of
> the venire respond to questions posed.  The circuit court is in a
> superior position to determine whether a prospective juror's
> responses during *voir dire* indicate that the juror would be
> prevented from or impaired in performing the duties of a juror as
> required by the court's instructions and the juror's oath.  Lovitt v.
> Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000);
> Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176
> (1999), cert. denied, 530 U.S. 1218 (2000); Stewart v.
> Commonwealth, 245 Va. 222, 234, 427 S.E.2d 394, 402, cert.
> denied, 510 U.S. 848 (1993).  We must consider the *voir dire* as a
> whole, and not the juror's isolated statements.  Clagett v.
> Commonwealth, 252 Va. 79, 90, 472 S.E.2d 263, 269 (1996), cert.
> denied, 519 U.S. 1122 (1997).  And, the circuit court's refusal to
> strike a juror for cause will not be disturbed on appeal unless that
> decision constitutes manifest error.  Clagett, 252 Va. at 90, 472
> S.E.2d at 269; Roach v. Commonwealth, 251 Va. 324, 343, 468
> S.E.2d 98, 109, cert. denied, 519 U.S. 951 (1996); Stockton v.
> Commonwealth, 241 Va. 192, 200, 402 S.E.2d 196, 200, cert.
> denied, 502 U.S. 902 (1991).

Id. at 115-16, 546 S.E.2d at 451.  See Vinson, 258 Va. at 467, 522 S.E.2d at 176 (citation

omitted).  See also Riner v. Commonwealth, 40 Va. App. 440, 465, 579 S.E.2d 671, 683 (2003),

aff'd, 268 Va. 296, 601 S.E.2d 555 (2004).

From these legal principles recognizing a trial court's ability "to observe and evaluate the

apparent sincerity, consciousness, intelligence, and demeanor of prospective jurors first hand,"

Pope v. Commonwealth, 234 Va. 114, 123-24, 360 S.E.2d 352, 358 (1987), cert. denied, 485

U.S. 1015 (1988), it follows that *per se* exclusions, *viz.*, those based on characteristics the law

recognizes as inherently biased-laden, are not favored.  See Scott v. Commonwealth, 1 Va. App.

447, 452, 339 S.E.2d 899, 901 (1986) ("*Per se* disqualifications [of jurors] are few in number

and disfavored."); see also Briley v. Commonwealth, 221 Va. 532, 273 S.E.2d 48 (1980), cert. denied, 451 U.S. 1031 (1981) (assuming that a juror can sit impartially in judgment of the defendant as long as she states that she can overcome any potential bias). That the juror knew Chase's daughter, who used to be, but was no longer, her supervisor does not establish the type of relationship that requires she be stricken for cause. Cf. Lilly v. Commonwealth, 255 Va. 558, 569, 499 S.E.2d 522, 531 (1998) (noting that person related to a victim is disqualified from serving as a juror); Code § 8.01-358 (providing right to examine juror to insure he or she is not related to either party, has any interest in the cause, or has any bias or prejudice); Rule 3A:14 (listing questions trial judge should ask jurors to determine if juror is qualified).

This Court has specifically found employment relationships with the victim or with a person related to a victim insufficient to create a presumption of impartiality. See e.g., Williams v. Commonwealth, 21 Va. App. 616, 466 S.E.2d 754 (1996) (*en banc*) (holding that the trial court had not erred in refusing to dismiss a juror where the juror admitted having a brother who worked at the same correctional facility as the victim); Barrette v. Commonwealth, 11 Va. App. 357, 398 S.E.2d 695 (1990) (upholding the trial court's finding of impartiality where the juror was an employee of the victim company); see also Scott, 1 Va. App. at 452-53, 339 S.E.2d at 902 (finding no error in a trial court's finding of impartiality where a juror revealed that he had worked for a store whose employee was the victim of a robbery and who had been a victim of robbery himself).

In Scott, a prospective juror worked for a supermarket where a cashier had been robbed. Scott, 1 Va. App. at 448-49, 339 S.E.2d at 900. The prospective juror denied the relationship would affect his partiality. Id. This Court concluded that, notwithstanding the overt or subtle influences that may affect a juror who is employed by the victim of a crime, the juror's "employment . . . without more, should not lead us to impute a bias to him which is not disclosed

by the record. . . . [The juror's] employment does not constitute *per se* the 'interest in the cause' prohibited by Code § 8.01-358." Id. at 452-53, 339 S.E.2d at 902. In reaching this conclusion, this Court cited to and relied on State v. Wilcox, 286 S.E.2d 257 (W. Va. 1982), where two prospective jurors who were employees of the victim's brother were not deemed subject to *per se* exclusion.

Here, the juror was formerly supervised by the victim's daughter, an employment relationship not substantively different from that in Scott, where the juror was an employee of the victim supermarket, or from that in Wilcox, where the juror was employed by the victim's brother. In fact, the employment relationship in this case is even more attenuated than that in Scott and Wilcox. In those cases, the victim or the victim's family employed the jurors at the time of trial, whereas, in this case, the employment relationship between the juror and Chase's daughter had ended and was unlikely to recur. Further, unlike in Scott, where the employment relationship existed between the juror and the victim supermarket, the juror in this case did not have an employment relationship with the victim herself. The relationships in both cases were found insufficient to constitute a *per se* basis for exclusion from service. Thus, we decline to accept Green's argument that the juror in this case is subject to a *per se* rule of exclusion.

Mistrial Motion

Despite our conclusion that the *per se* rule has no applicability here, we must now determine whether the trial court committed reversible error in refusing to grant a mistrial.

> When the issue arises from a mid-trial challenge to a juror's impartiality, we "will reverse the trial court's decision only for an abuse of discretion," applying the same standard of review appropriate to appellate consideration of the trial court's decision to seat a venireperson. Hence, we will not reverse "the denial of a motion for a mistrial . . . unless there exists a manifest probability that [the ruling] was prejudicial."

Brooks v. Commonwealth, 41 Va. App. 454, 459-60, 585 S.E.2d 852, 854 (2003) (citations omitted). See also Green v. Commonwealth, 266 Va. 81, 102, 580 S.E.2d 834, 846 (2003) ("'When a motion for mistrial is made, . . . the trial court must make an initial factual determination . . . whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial.' Unless we can say that the trial court's determination was wrong as a matter of law, we will not disturb its judgment on appeal.'").

Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial. Taylor v. Commonwealth, 25 Va. App. 12, 17, 486 S.E.2d 108, 110 (1997). "[T]he burden of establishing that probability [rests] upon the party moving for a mistrial." Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998). We find under the facts of this case that the evidence fails to show the juror could not decide the case impartially, therefore, the trial court did not abuse its discretion in refusing to grant a mistrial.

After the juror alerted the trial court to the fact she knew the victim's daughter, the trial judge thoroughly questioned her and allowed counsel to do so as well. Although her initial response was equivocal, the trial judge found her to be impartial and able to render a fair, unbiased verdict. None of her answers reflected present allegiances or affiliations with the victim's daughter or a propensity to improperly favor the victim's testimony. Asked if she could provide a fair trial without partisanship, the juror unequivocally replied, "No partisanship whatsoever."

Moreover, because Chase did not know Green or see who committed the crime, her testimony was not a key factor in the case and her credibility as an eyewitness was not an issue, thus lessening the probability of prejudice. See State v. Faucher, 596 N.W.2d 770, 785 (Wis. 1999) (finding that juror who knew a prosecution witness had objective bias and should have

been struck despite avowal that juror could be impartial where, *inter alia*, the witness was a "crucial witness in the State's case" and the only eyewitness; explaining that the trial was essentially "a credibility contest" between the eyewitness and the defendant).  See also Brooks, 41 Va. App. at 459, 585 S.E.2d at 854 (noting heavy burden of establishing manifest probability that ruling denying motion for mistrial was prejudicial).  Instead, her testimony focused on describing what she heard the night of the burglary and the conditions of her house when she awoke the next morning.  The police officers investigated and provided their observations of the crime scene, making much of Chase's testimony corroborative.

In sum, the *voir dire*, considered as a whole, supports the conclusion that the trial court did not err in denying Green's mistrial motion, a decision based on the trial judge's observations, thorough findings and analysis, the juror's assurances of impartiality, her lack of knowledge about the case, her "exercise of conscience" in bringing to light the potential conflict, and the prior termination of her employment relationship with Chase's daughter.[1]  We cannot say the decision to deny the mistrial motion constituted manifest error.

ISSUE II:  SUFFICIENCY OF THE EVIDENCE

Standard of Review

When the sufficiency of the evidence is challenged on appeal, the appellate court reviews the evidence that tends to support the conviction and upholds the conviction unless it is plainly wrong or lacks evidentiary support.  Code § 8.01-680; Commonwealth v. Jenkins, 255 Va. 516,

---

[1] While the juror at one point in time expressed some discomfort with respect to her prospective service as a juror in the case, that concern, in itself, would not be enough to disqualify her in light of her assurance that she could try the case impartially.  See Mackall v. Commonwealth, 236 Va. 240, 252, 372 S.E.2d 759, 767 (1988) (upholding a trial court's denial of a motion to strike a juror where the juror admitted to being "uncomfortable" about sitting on the jury but nevertheless indicated that she could be impartial).  Similarly, although some of the juror's initial responses to the court's questions were either unclear or suggested confusion on her part, she later unequivocally stated that she would exercise "[n]o partisanship whatsoever" towards the defendant.  Cf. id.

520, 499 S.E.2d 263, 265 (1998). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id.

> "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003).

The Commonwealth relied, in part, on circumstantial evidence to establish Green's guilt. It is well established that circumstantial evidence is sufficient to support a conviction as long as it excludes every reasonable hypothesis of innocence. Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983); Mercer v. Commonwealth, 29 Va. App. 380, 385, 512 S.E.2d 173, 175-76 (1999). Further, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

Discussion

The Virginia Supreme Court has addressed the issue of sufficiency with respect to cases where the primary evidence is a fingerprint located at or near the crime scene. In Turner v. Commonwealth, 218 Va. 141, 235 S.E.2d 357 (1977), for example, the Court held that

> while [a] defendant's fingerprint found at the scene of [a] crime may be sufficient . . . to show defendant was there at some time, nevertheless in order to show defendant was the criminal agent, such evidence must be coupled with the evidence of other circumstances that reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. Such "other circumstances . . . need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the

- 10 -

place or premises where it was found and the accessibility of the general public to the object on which the print was impressed." Those attendant circumstances may demonstrate the accused was at the scene of the crime when it was committed. And if such circumstances do so demonstrate, a rational inference arises that the accused was the criminal agent.

Id. at 146-47, 235 S.E.2d at 360; see also Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (citing and relying on Turner for this proposition); Ricks v. Commonwealth, 218 Va. 523, 526, 237 S.E.2d 810, 812 (1977); Avent v. Commonwealth, 209 Va. 474, 479-80, 164 S.E.2d 655, 659 (1968). Fingerprinting is a certain and scientific method of identification and "actually, 'an unforgeable signature.'" Turner, 218 Va. at 146, 235 S.E.2d at 369 (quoting Avent, 209 Va. at 478, 164 S.E.2d at 658).

In Tyler, the police found the defendant's fingerprint on both sides of a piece of glass lying on the public sidewalk in front of a shattered storefront window. Tyler, 254 Va. at 163, 487 S.E.2d at 222. The broken window served as the point of entry to the store, from which merchandise was missing. Arguing that the fingerprint evidence was the only evidence adduced against him and that the Commonwealth's evidence failed to exclude reasonable hypotheses of innocence, the defendant in Tyler, like the defendant in this case, maintained that the evidence was insufficient to prove that he had committed the crime. Id. at 164, 487 S.E.2d at 222. In his brief, the defendant in Tyler advanced a number of alternative explanations for how his fingerprints could have been left on the glass.[2] The Court rejected these alternative hypotheses,

---

[2] Specifically, Tyler argued that since the broken glass was on a public sidewalk,

any pedestrian (drunk, sober, or naturally clumsy) might have fallen amidst the broken glass and needed to clear space in order to arise by pushing off against the ground. Anyone walking barefoot on such a summer day might have picked up the glass in order to avoid the broken glass--or to avoid the necessity of detouring onto the hot tarmac of a city street. Even idle curiosity could innocently and plausibly explain why someone would have picked up broken glass lying on a city sidewalk in front of a store with an

finding no support for them in the evidence presented at trial. Id. at 167, 487 S.E.2d at 224.

Instead, the Court found that the fingerprint, coupled with its location and the evidence showing

that the defendant had no "business or reason" that would have justified his presence at the

scene, was sufficient to support the trial court's ruling. Id.

In reaching this conclusion, the Tyler Court relied on its decision in Avent. In Avent, the

defendant was convicted of burglary involving larceny of clothing stored in a warehouse. The

police lifted one of the defendant's fingerprints from a piece of glass located inside the

warehouse below a window that was broken to gain access to the building. As in Tyler, the

Court found the evidence sufficient because of the location of the fingerprint and the fact that the

defendant had no reason or justification for his presence in or around the premises. Avent, 209

Va. at 477, 164 S.E.2d at 657-58.

Green attempts to distinguish Tyler and Avent on the ground that in those cases the

fingerprint was located in close proximity to the point of entry of the burglarized building. He

argues that, since the only fingerprint found was on the back door of the house, and not at the

point of entry or on the property removed from the garage, an inference of guilt based on the

location of the fingerprint cannot be reasonably drawn.

Green reads the holdings of Tyler and Avent too narrowly. We find these cases to be

controlling because they make clear that in evaluating the sufficiency of fingerprint evidence, it

is important to consider "other circumstances that reasonably exclude the hypothesis that the

print was impressed at a time other than that of the crime." Tyler, 254 Va. at 166, 487 S.E.2d at

223 (citing Turner, 218 Va. at 146-47, 235 S.E.2d at 360). Contrary to Green's contentions, a

---

eye-catching, broken window. In any of these instances, the base
of the window would seem to be the most logical place to set the
glass fragments down again.

Id. at 164-65, 487 S.E.2d at 222.

number of such circumstances were proved in this case. Green's fingerprints were on the glass on the back door of the victim's residence. The door could be reached only from the backyard, which was surrounded by a chain link fence. While the garage may have been the point of entry for the burglary, it is a clear and reasonable inference that the same person made efforts to enter the other parts of the house by raising storm windows, by touching the screens and, most significantly, by removing wood from around the window of the back door. The backyard, unlike the sidewalk in Tyler, was not accessible to the public. Furthermore, Chase does not know Green, denied authorizing him to be on her property, and excluded him as a worker on any work crews authorized to work on her property during the relevant time periods. The jury did not find reasonable the inference "that [Green's] fingerprints were impressed at a time other than that of the crime," and we are bound by that determination unless it is plainly wrong. Jenkins, 255 Va. at 520, 499 S.E.2d at 265.

We find that the fingerprint evidence "disclosing [the defendant's] presence at the scene of the crime was 'coupled with evidence of other circumstances tending to reasonably exclude' the defendant's several hypotheses that his presence and his handling of the . . . glass were unrelated to the commission of that crime." Tyler, 254 Va. at 167, 487 S.E.2d at 224. Thus, we find there was sufficient evidence from which the fact finder could have reasonably concluded that Green committed the crime beyond a reasonable doubt. Considering that evidence, we cannot say the jury's verdict was plainly wrong or without evidence to support it. Accordingly, the judgment of the trial court is affirmed.

                                                                    Affirmed.