COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


JUSTIN JAY GARCIA
                                            OPINION BY
v.    Record No. 0736-02-4         JUDGE ROBERT J. HUMPHREYS
                                         MARCH 25, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Jonathan C. Thacher, Judge

          Rita K. Janecek, Assistant Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Jennifer R. Franklin, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General;
          Margaret W. Reed, Assistant Attorney General,
          on brief), for appellee.


     Justin Jay Garcia appeals his conviction, after a jury trial,

for felony obstruction of justice, in violation of Code

§ 18.2-460.  Garcia contends that the trial court erred in finding

the evidence was sufficient, as a matter of law, to support the

conviction.  Garcia argues specifically that Code § 18.2-460(C)

requires that any conduct punishable under that subsection of the

statute be related to conduct involving "a violation of or

conspiracy to violate [Code] § 18.2-248 or § 18.2-248.1(a)(3), (b)

or (c)."  For the reasons that follow, we affirm the decision of

the trial court.

## I.  Background

On July 5, 2001, at approximately midnight, Officer Leonard P. Hurd, III, of the Herndon Police Department, was dispatched to a local bar to investigate a fight that was in progress between a patron and an employee of the bar.  When Officer Hurd arrived, he observed a number of people standing outside the bar.  He went inside and immediately observed two men who were actively engaged in a physical fight.  Officer Hurd approached the men and ordered them to "[b]reak it up."  Neither man complied, so Officer Hurd reached down and grabbed one of the men, "pulled him off of the gentleman he was on top of and directed him off to [his] right."  The man landed in a seated position on the floor.

Officer Hurd then told both individuals to "stay down on the ground."  However, the first man, whom Hurd later determined to be Garcia, "kept trying to stand up."  Hurd had to instruct Garcia to stay seated six or seven times.  Nevertheless, Garcia eventually stood and pushed "through" Hurd, toward the other gentleman, a bar employee, who had been engaged in the fight.  At that point, Officer Hurd applied an "arm bar" technique to Garcia in order to push him face first toward the floor.  Garcia continued to struggle "to rise up."  Hurd told Garcia, "Stop resisting me. You're under arrest for assault.  Stop resisting.  Give me your arms.  Put your arms next to your side."  Garcia did not respond, but continued to struggle.

-

It took the efforts of Officer Hurd, two other officers, and a bar patron to handcuff Garcia, as he "continued to fight." During the altercation that occurred in attempting to handcuff Garcia, the officers had to use various police tactics in order to gain access to his wrists.  Hurd and his partner used an "iron wrist" technique, pressure point tactics, knee strikes to Garcia's perineal nerve, pepper spray, and an ASP baton before they were ultimately able to handcuff him.  However, Garcia continued to struggle.  He dragged his feet and refused to walk, so Hurd and his fellow officers were forced to carry him outside to Hurd's police car.

When they were outside, Garcia refused to allow Officer Hurd to pat him down and then refused to get into the police car. Officer Hurd had to push Garcia at his belt area in order to "fold" him into the car.  As he did so, Garcia "kicked out with his right foot" and hit Officer Hurd in the thigh.  At that point, and because of the crowd gathering, Hurd drove Garcia to a gravel lot across the street from the bar, and called paramedics to "decontaminate [Garcia] because of the" pepper spray.  While they waited for the medics, Garcia cried, screamed and spit "all over the inside of the car."  When the medics arrived, Garcia continued to be combative, "cussing and screaming" the entire time, stating he was going to "kick [their] ass."

When the medics finished, Officer Hurd placed Garcia in the back seat of the police car, "put the seat belt on him," and

-

closed the door.  As Hurd walked around to the driver's side of the car, Garcia kept "pushing his hips up toward the front of the car," and turning his body, and eventually "popped the seatbelt using his hands."  Hurd secured the seatbelt again, but Garcia "popped" it open two additional times.  At that point, Hurd's sergeant told Hurd to "[j]ust get him out of here," so Hurd left and drove toward the Adult Detention Center.

During the trip, Garcia continued to struggle and succeeded in opening the seatbelt three more times, causing Hurd to have to stop the car and refasten the belt each time.  Garcia then began kicking at the car windows and the cage between the front and back seats of the car.  Hurd called for assistance and shortly thereafter, Garcia kicked out the back window of the police car. Hurd then stopped the car and waited for the other officers to arrive.

When the other officers arrived to assist Officer Hurd, they helped him place Garcia, who continued to flail and struggle, in a "rip hobble" to secure his legs.  Garcia continued to scream and stated "I'll kill you mother f---ers."  Officer Hurd then continued driving to the detention center.  When he arrived, Hurd removed the "rip hobble" from Garcia's legs with the assistance of the other officers and asked Garcia to walk to the door.  Garcia complied, but as they got closer to the door, he attempted to kick Officer Hurd once again.  The officers then secured Garcia on the ground.  Garcia stated, "Fine.  I won't fight you."  The officers

-

let Garcia stand up at that point, and walk inside the detention center.  Garcia remained verbally combative at that time, but ceased physical resistance.

Garcia was subsequently indicted for assaulting a law enforcement officer, in violation of Code § 18.2-57, obstructing justice, in violation of Code § 18.2-460(C), and destroying property valuing less than $1,000, in violation of Code § 18.2-137.[1]

During his trial on these charges, Garcia raised a motion to strike at the close of the Commonwealth's evidence, and again at the close of all the evidence, contending, in part, that Code § 18.2-460(C) requires the conduct in question to be related to drug offenses, or other specified violent offenses.  Garcia further contended that the statute was unconstitutional as it could be "read two different ways."  The trial court denied Garcia's motions to strike, finding that Code § 18.2-460(C) was written by the legislature in the disjunctive, allowing for two separate offenses, one of which did not require a relationship to another offense.

The jury ultimately found Garcia guilty of obstructing justice, but not guilty of assault and battery on a police

---

[1] The Commonwealth <u>nolle</u> <u>prosequied</u> the misdemeanor count of destroying property prior to Garcia's trial.

officer.  Garcia was subsequently sentenced to serve twelve months in the county jail and pay a fine of $2,500.

## II.  Analysis

On appeal, Garcia contends that the trial court erred in finding the evidence sufficient, as a matter of law, to support the conviction.  Garcia argues that Code § 18.2-460(C) specifically requires that any conduct punishable under the statute, be related to conduct involving "a violation of or conspiracy to violate [Code] § 18.2-248 or § 18.2-248.1(a)(3), (b) or (c)."  We disagree.

When a defendant challenges the sufficiency of the evidence on appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  We will not disturb the fact finder's verdict unless it is plainly wrong or without evidence to support it.  Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385 (1984).

Code § 18.2-460 provides as follows, in relevant part:

> A.  If any person without just cause knowingly obstructs a judge, magistrate, justice, juror, attorney for the Commonwealth, witness or any law-enforcement officer in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such judge, magistrate, justice, juror, attorney for the Commonwealth, witness, or law-enforcement officer, he shall be guilty of a Class 1 misdemeanor.

-

B.  If any person, by threats or force, knowingly attempts to intimidate or impede a judge, magistrate, justice, juror, attorney for the Commonwealth, witness, or any law-enforcement officer, lawfully engaged in his duties as such, or to obstruct or impede the administration of justice in any court, he shall be deemed to be guilty of a Class 1 misdemeanor.

C.  If any person by threats of bodily harm or force knowingly attempts to intimidate or impede a judge, magistrate, justice, juror, witness, or any law-enforcement officer, lawfully engaged in the discharge of his duty, or to obstruct or impede the administration of justice in any court relating to a violation of or conspiracy to violate § 18.2-248 or § 18.2-248.1(a)(3), (b) or (c), or relating to the violation of or conspiracy to violate any violent felony offense listed in subsection C of § 17.1-805, he shall be guilty of a Class 5 felony.

(Emphasis added).

It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense.  If the intention of the legislature can be thus discovered, it is not permissible to add to or subtract from the words used in the statute.

Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771

(1918).  Indeed,

[i]n the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and

-

that is to ascertain the will of the
legislature, the true intent and meaning of
the statute, which are to be gathered by
giving to all the words used their plain
meaning, and construing all statutes in pari
materia in such manner as to reconcile, if
possible, any discordant feature which may
exist, and make the body of the laws
harmonious and just in their operation.

Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914).

Nevertheless, "[i]t is [also] a cardinal principle of law that

penal statutes are to be construed strictly against the State

and in favor of the liberty of a person.  Such a statute cannot

be extended by implication, or be made to include cases which

are not within the letter and spirit of the statute."  Wade v.

Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960).  Yet,

"we construe a statute to promote the end for which it was

enacted, if such an interpretation can reasonably be made from

the language used."  Woolfolk v. Commonwealth, 18 Va. App. 840,

847, 447 S.E.2d 530, 533 (1994).

In applying these principles of law, we find that Garcia's

claim lacks merit.

[T]he structure of the challenged
sentence . . . [and] grammatical rules that
pertain, do not support [Garcia's]
interpretation.  Generally, phrases
separated by a comma and the disjunctive
"or," are independent.  See, e.g., Ruben v.
Secretary of HHS, 22 Cl. Ct. 264, 266 (1991)
(finding that, the word "or" connects two
parts of a sentence, "'but disconnect[s]
their meaning'" (quoting G. Curme, A Grammar
of the English Language, Syntax 166
(1986))); Quindlen v. Prudential Ins. Co.,
482 F.2d 876, 878 (5th Cir. 1973) (noting

-

disjunctive results in alternatives, which must be treated separately); United States v. Erdos, 474 F.2d 157, 160 (4th Cir. 1973) (finding that limiting phrase in statute is independent of and does not modify two earlier phrases because the limiting phrase is separated from the first two by a comma and the disjunctive "or"); United States v. Riely, 169 F.2d 542, 543 (4th Cir. 1948) (interpreting the use of a comma and the disjunctive "or" as implying two separate and independent phrases in a Virginia statute authorizing payment of dividends by corporation "out of net earnings, or out of its net assets in excess of its capital").

Smoot v. Commonwealth, 37 Va. App. 495, 501, 559 S.E.2d 409, 412 (2002). Accordingly, the phrase, "to intimidate or impede . . . any law-enforcement officer, lawfully engaged in the discharge of his duty," is independent of the phrase, "to obstruct or impede the administration of justice in any court relating to a violation of or conspiracy to violate" the specified drug-related statutes or felony offenses. Each phrase therefore, specifies a separate and distinct proscription that may constitute a violation of that particular subsection of the statute.

Furthermore, neither our decision in Turner v. Commonwealth, 20 Va. App. 713, 460 S.E.2d 605 (1995), nor the unpublished decision of this Court cited by Garcia, supports his argument.[2] In fact, both cases specifically involved the second phrase of

_____

[2] Indeed, the issue addressed in Turner was not the same issue we address here. Instead, in that case, we considered only whether the Commonwealth was required to prove the underlying predicate felonies stated in Code § 18.2-460(C),

-

Code § 18.2-460(C), as each case was directly related to police investigation of drug offenses.  See Turner, 20 Va. App. at 716-17, 460 S.E.2d at 606-07 (noting that the police officer investigating the matter informed Turner that he had an arrest warrant for him on a charge of selling cocaine).

For the foregoing reasons, we find no error in the trial court's determination here that the plain, obvious reading of Code § 18.2-460(C) provides for two separate methods of violating the subsection: 1) a knowing attempt to intimidate or impede a law enforcement officer in the performance of his duties; and 2) a knowing attempt to obstruct or impede the administration of justice in any court when the conduct at issue relates in some manner to the specified offenses.  We thus, affirm Garcia's conviction.

Affirmed.

---

before the defendant could be convicted of obstruction of justice.  See Turner, 20 Va. App. at 715-16, 460 S.E.2d at 606.  Thus, any language contained in that opinion concerning the statutory construction argument at issue here was dicta which was unnecessary to the decision of that appeal, and which is thus, not binding on this Court.  See Harmon, et als. v. Peery, 145 Va. 578, 583, 134 S.E. 701, 702 (1926).

-