ANNUNZIATA, Judge.
Kenneth Carl Brooks was convicted in a jury trial on three counts of taking indecent liberties in violation of Code § 18.2-370, two animate object penetration charges in violation of § 18.2-67.2, and five aggravated sexual battery charges in violation of § 18.2-67.3. Imposing the sentence fixed by the *457 jury, the trial court sentenced Brooks to 99 years in prison, 10 of which were suspended, and ordered him to pay a $25,000 fine.
Brooks appeals his convictions on the ground that the trial court erred because it denied his motion to excuse for cause a juror who was related to several of the prosecution witnesses and to the victims and denied his motion for a mistrial. We find no error and affirm.

Factual Background

Brooks was indicted and ultimately convicted of committing various sexual offenses against several minors: L.M., A.G., De.M., R.M., and D.M.[1] The minors testified for the Commonwealth at the trial, as did their fathers.
During pretrial voir dire, the judge asked the venire members: “Are any of you related by blood or marriage to any of those persons against whom the alleged offenses were committed, or do you know them?” All the jurors responded in the negative. However, after the first day of the trial, the clerk received a telephone call from one of the seated jurors, Nancy Cook, expressing some concerns. As a result, the judge conducted the following voir dire the next morning:
THE COURT: Ms. Cook, it has come to the Court’s attention that you conversed with the Clerk about a matter that was of concern to you.
MS. COOK: Yes, sir.
THE COURT: All right. Would you go ahead, for the record, so that the attorneys get an opportunity to hear what your concern is and the Court gets an opportunity to evaluate your concern and see if it is well-placed or if it is not of great consequence.
MS. COOK: Okay. My brother-in-law is the [victims’] great uncle. And, I don’t know them.
THE COURT: You want to run that by me gain?
*458 MS. COOK: My brother-in-law.
THE COURT: Explain that.
MS. COOK: My sister’s husband. It is my brother-in-law. He is the girls’ great uncle and, I didn’t know that yesterday.
£ # # sjj
THE COURT: Don’t think it would make a difference.
MS. COOK: No. It is kind of like you wake up at nighttime all of a sudden and it kind of hits you, you know. When [the victims’ uncle] came in, he looked familiar to me. I thought that I was introduced to him one time.... He just looked familiar to me, and then I put the girls in place. THE COURT: You don’t actually know any of these people?
MS. COOK: I don’t know them. I don’t know them from Adam. I would [sic] know them if I passed them on the street. I wouldn’t know them.
THE COURT: Mr. Ambrogi, any questions?
MR. AMBROGI: No question. No, sir.
THE COURT: Mr. Crane, any questions of this lady?
MR. CRANE: No, Your Honor.
THE COURT: Ma'am, you believe you can continue to sit and hear this case and act fairly and impartially?
MS. COOK: Yes, I do.-
THE COURT: You believe you can follow the instructions of law that the Court gives you and decide this case fairly and impartially, giving a fair trial to both sides?
MS. COOK: Yes, sir. I do.
THE COURT: Ma'am, I appreciate your diligence by bringing this concern to our attention. It is important that a fair trial be had for all sides.
MS. COOK: Yes. That is what I wanted.
THE COURT: Ask you to retire back with the jury. Thank you, ma'am.
*459 Defense counsel then asked the court to remove Cook from the jury. He argued, “[t]he fact that she is related would make it difficult for her to be unbiased in evaluating the evidence” and “in the interest of fairness it is important not to have relatives of the prosecutrixes on the jury panel. We just don’t know.” The prosecutor opposed the motion, arguing that any relationship was remote. He also noted Cook’s assertion that her decision would be unaffected by her brother-in-law’s relationship to the victims.
Defense counsel renewed his objection and moved for a mistrial. The court denied the motion and stated that the relationship was not close enough to disqualify the juror. The court also found that “Mr. Brooks will receive a fair trial and will continue to do so with Mrs. Cook sitting as a jury member.”

Analysis

Brooks’s appeal comes before this Court on a denial of a motion for a mistrial. Upon familiar principles, we will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court’s ruling was prejudicial. Taylor v. Commonwealth, 25 Va.App. 12, 17, 486 S.E.2d 108, 110 (1997). “[T]he burden of establishing that probability [rests] upon the party moving for a mistrial.” Green v. Commonwealth, 26 Va.App. 394, 401, 494 S.E.2d 888, 891 (1998) (citations omitted). Moreover, it is well settled that the credibility of witnesses and the weight accorded witnesses’ testimony are matters that are within the province of the fact finder. Phan v. Commonwealth, 258 Va. 506, 513, 521 S.E.2d 282, 286 (1999); Brooks v. Commonwealth, 15 Va.App. 407, 414, 424 S.E.2d 566, 571 (1992).
When the issue arises from a mid-trial challenge to a juror’s impartiality, we “will reverse the trial court’s decision only for an abuse of discretion,” applying the same standard of review appropriate to appellate consideration of the trial court’s decision to seat a venireperson. David v. Commonwealth, 26 Va.App. 77, 80, 493 S.E.2d 379, 381 (1997) (noting *460 that juror impartiality is a factual determination, disturbed on appeal only for “manifest error”). Hence, we will not reverse “the denial of a motion for a mistrial ... unless there exists a manifest probability that [the ruling] was prejudicial.” Id. (citations omitted).
The instant case involves a mid-trial challenge to a juror’s impartiality. Brooks contends that Cook’s relationship to the victims and to the Commonwealth’s witnesses absolutely bars her from acting as a juror in the case, on the ground that, due to those relationships, she could not be impartial. Brooks specifically invokes the rules governing consanguinity and affinity in support of his argument.
The Virginia Supreme Court held in Gray v. Commonwealth, 226 Va. 591, 311 S.E.2d 409 (1984), that “the longstanding, common-law rule disqualifying a venireman who is related, within the ninth degree of consanguinity or affinity, to a party to a suit” also “applies to a victim of a crime as well as to a party.” Id. at 593, 311 S.E.2d at 410. The relationship at issue here involved Cook’s brother-in-law, her sister’s husband, who was the great uncle of the victims and, by implication, the uncle of the victims’ fathers, who were expected to be called as witnesses in the case. Brooks contends that Cook was “absolutely disqualified” as a juror because she was related within the “ninth degree of consanguinity” to the alleged victims and their parents. We disagree.
“Consanguinity” is a “relation by blood.” Doyle v. Commonwealth, 100 Va. 808, 810, 40 S.E. 925, 926 (1902). It is patent Cook was not related by blood to her sister’s husband and, by extension, she was not related by blood to the victims or their fathers.
Cook was also not related to the victims or their fathers by affinity. Affinity is the relation of one spouse to the other spouse’s kindred. Id. “ ‘Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and the blood relatives of the husband.... [T]here is no affinity between the blood relatives of the husband and the blood relatives of the *461 wife.’ ” Norris v. Presley, 292 Ala. 155, 290 So.2d 643, 645 (1974) (citations omitted). Here, the relationship at issue did not involve Cook and her husband’s blood relatives. Rather, it involved a relationship between her sister’s husband and his blood relatives. We conclude that the relationship does not fall within the definition of affinity.[2] See Doyle, 100 Va. at 810-11, 40 S.E. at 926 (finding that a juror, who was the nephew of a man related by marriage to kindred of the victim, was not disqualified from sitting through “affinity”); see also Anderson v. State, 30 Ala.App. 124, 2 So.2d 461, 462 (1941) (finding that a juror in a murder case, who was the brother-in-law of the victim’s sister, was not disqualified because “[n]o relationship by consanguinity or affinity is presented as would disqualify said juror”).
Moreover, Brooks has the burden of establishing that he was prejudiced by the trial court’s decision not to grant his motion for a mistrial. See Green, 26 Va.App. at 401, 494 S.E.2d at 891. “To determine if a trial court’s denial of a motion for a mistrial was prejudicial, when a juror’s conduct is at issue, we must look to the juror’s possible bias. The existence of an individual juror’s possible bias or partiality is a question of fact to be determined by the trial court.” Perez v. Commonwealth, 40 Va.App. 648, 655, 580 S.E.2d 507, 509 (2003) (citing Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985)).
Brooks contends that, even if Cook is not excluded from serving as a juror in this case in accordance with the principles of consanguinity and affinity, her familial relationship, in and of itself, gives rise to inherent bias on her part and would affect her decision-making. Brooks’s argument is a simple recast of his contentions rooted in the principles of consanguinity and affinity, which we have determined do not apply as a bar to Cook’s serving as a juror in this case. Therefore, we *462 reject this argument because no presumption of bias may be said to arise by virtue of the relationship itself.
Reviewing Brooks’s contention factually, we find, furthermore, that nothing in the record supports the conclusion that Cook would be unable to fairly try the case. The Supreme Court of Virginia has set out the following standard for appellate review of the trial court’s decision whether to retain or exclude prospective jurors:
Upon appellate review, this Court gives deference to the trial court’s decision whether to retain or exclude prospective jurors. This is because the trial judge has observed and heard each member of the venire and is in a superior position to evaluate whether the juror’s responses during voir dire develop anything that would prevent or substantially impair the juror’s performance of duty as a juror in accord with the court’s instructions and the juror’s oath. A trial court’s decision on this issue will be affirmed absent a showing of manifest error. And, a juror’s entire voir dire, not isolated portions, must be considered to determine a juror’s impartiality.
Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999) (citations omitted). We cannot say that the trial court’s finding that Cook was an impartial juror was manifest error. See id.
Finally, we address whether the trial court erred in denying Brooks’s motion to strike Cook for cause on the ground that her participation as a juror in the case eroded public confidence in the integrity and fairness of the judicial process. See Medici v. Commonwealth, 260 Va. 223, 532 S.E.2d 28 (2000); Patterson v. Commonwealth, 39 Va.App. 658, 576 S.E.2d 222 (2003). Contrary to the argument of the Commonwealth that the issue is not properly before us because Brooks failed to raise it before the trial court and did not raise it on appeal, under the Supreme Court’s holding in Medici, by implication, the question of public confidence is inherent in the jury selection process and is necessarily implicated when a juror’s retention is purportedly improper. Med *463 ici, 260 Va. at 227, 532 S.E.2d at 31. In Medici, the issue of public confidence was not listed as a question on appeal; nor did the defendant make an objection at trial on the issue of public confidence.[3] The Virginia Supreme Court, nonetheless, addressed the question and reversed the defendant’s conviction based on the trial court’s failure to strike a juror who had a relationship with the office of defendant’s counsel, finding that “permitting [the potential juror] to sit [on the jury] ... would weaken public confidence in the integrity of criminal trials.” Medici 260 Va. at 227, 532 S.E.2d at 32.
Relying on Medici and its progeny, this Court stated in Patterson:
The Supreme Court cases on this issue do not indicate that prior appellants specifically raised “public confidence” at the trial level, but instead suggest the trial judge must specifically consider the effect that placing the venireman on the jury will have on the public’s confidence in the judicial system....
Patterson, 39 Va.App. at 666, 576 S.E.2d at 226 (citations and quotations omitted). “We conclude ... that an analysis of ‘public confidence’ is inherent in any appellate review of a juror’s impartiality____” Id. at 669, 576 S.E.2d at 228 (emphasis added).[4] We therefore address the question, as it is inherent in Brooks’s contention that the trial court’s seating of the juror was improper, notwithstanding Brooks’s failure to raise it at the trial court and on appeal.
We find that seating Ms. Cook as a juror, under the circumstances of this case, would not erode public confidence *464 in the integrity of the judicial process. As noted earlier, the relationship between the juror and witness was not one of either consanguinity or affinity, which would require her removal from the jury on the ground that “the law presumeth that one kinsman doth favor another more than a stranger.” Jaques v. Commonwealth, 51 Va. (10 Gratt.) 690, 694 (1853). Thus, as a matter of law, Ms. Cook’s relationship by marriage to the victims and the Commonwealth’s witnesses is treated as remote and tenuous, a factor to be considered in resolving this issue. Moreover, she was questioned at length regarding the relationship. She stated that she “thought she was introduced to [him] one time” because he “looked familiar.” However, when the judge asked Ms. Cook, ‘You don’t actually know any of these people,” she responded, “I don’t know them. I don’t know them from Adam.”
We cannot say that the public’s confidence in the integrity of the process would be undermined by the seating of an unbiased juror who was remotely related, by marriage, to the victims’ great uncle and to two of the Commonwealth’s witnesses, and whom the juror “[did not] know from Adam.”

Conclusion

Because we find Cook was not related by consanguinity or affinity to the victims or to any witnesses in the case, we hold the trial court properly refused to strike Cook for cause. Additionally, we find Brooks failed to meet his burden of establishing that the trial court’s denial of his mid-trial motion for a mistrial, stemming from Cook’s presence on the jury, resulted in a manifest probability of prejudice. Finally, we find that public confidence in the integrity of the judicial process would not be undermined by Ms. Cook’s service as a juror in the case at bar because the relationship at issue was too remote and tenuous to create the perception of bias. We, accordingly, hold that the trial court did not err in denying Brooks’s motion for a mistrial and affirm his convictions.

Affirmed.

. Because two of the minors have the same first and last name initials, we have identified one as De.M. and the other as D.M.

. Cook’s sister is arguably related to the victims and their fathers by affinity; affinity is the relationship between one spouse and the blood relatives of the other spouse. It does not follow, however, that Cook is, therefore, related to the victims and their fathers by affinity.

. A review of both the record and the briefs to the Supreme Court indicates the arguments at trial and on appeal were general arguments about the error in seating the juror at issue. Public confidence in the integrity of the judicial process was not raised as a ground for reversal at the trial level or on appeal.

. We note that, in Patterson, the issue of public confidence was raised on appeal in appellant’s brief to this Court. However, as noted above, it was not raised on appeal in Medici, and we find that, as a Supreme Court case, Medici controls our decision to address the question in the case at bar.