# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Raphael and White
Argued at Richmond, Virginia


JAMAR D. STREET

MEMORANDUM OPINION* BY
v.          Record No. 1383-23-2          CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 6, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

Sante John Piracci (Sante J. Piracci P.C., on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jamar D. Street appeals his convictions for murder in the second degree, use of a firearm

in the commission of a felony, second offense, and shooting in the commission of a felony. *See*

Code §§ 18.2-32, -53, -53.1. He argues that the court erred by denying his motions to strike two

specific jurors for cause, suggesting they were not impartial. Street also challenges the

sufficiency of the evidence to support his convictions. Specifically, he argues the

Commonwealth failed to prove he was the shooter and, even if he was, that he acted with malice.

For the reasons that follow, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Avery Taylor, III, was shot to death on August 1, 2021. The shooting occurred during an argument between Jamar Street and Brittany Waters, the mother of Street's child. As the pair argued, on a neighborhood street, the victim tried to intervene and was shot four times. He died before receiving medical attention.

The Commonwealth charged Street with several criminal offenses related to the murder. During jury selection, Street made motions to strike Jurors 10 and 21 for cause. The trial court denied the motions. Street peremptorily struck both jurors.

At trial, Bianca Webb and Adrian Brown testified for the Commonwealth. Webb, a close friend of Waters, was outside with Waters and Street when the shooting occurred. She testified that Waters and Street were arguing when the victim approached them. Webb turned away and then heard "shots." Brown, a nearby neighbor, watched events unfold from his porch. He testified that although he could not see the shooter's face, he saw the man arguing with the woman shoot the victim, who had tried to intervene.

At the conclusion of the prosecution's case-in-chief, Street made a motion to strike the evidence. He argued, in part, that the Commonwealth failed to prove his identity as the assailant. Street also contended that the evidence did not establish malice. The trial court denied the motion, and Street presented no evidence.

Street was found guilty by the jury of all the charges, and he was sentenced to a total of fifty years of incarceration, with fifteen years suspended.

---

[1] We view the evidence in the light most favorable to the Commonwealth, as the party who prevailed below. *Goodwin v. Commonwealth*, 71 Va. App. 125, 129 n.1 (2019). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *See Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam)).

ANALYSIS

## I. The Seating of the Jury

A criminal defendant has a constitutional right to be tried "by an impartial jury." U.S. Const. amend. VI; Va. Const. art. I, § 8. *See generally Cressell v. Commonwealth*, 32 Va. App. 744, 755 (2000) ("[A]n accused is entitled to a panel of jurors free from exception before exercising peremptory challenges."). And it is the trial court's responsibility to ensure that jurors are free from bias. *See Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995). During voir dire, if it "appear[s] to the court that the [prospective] juror does not stand indifferent in the cause, another [juror] shall be drawn or called and placed in his stead for the trial of that case." Code § 8.01-358. A potential juror should be struck for cause if that person "has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice." *Mayfield v. Commonwealth*, 59 Va. App. 839, 845 (2012) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 330 (2005)); *see* Rule 3A:14. "[W]hen a prospective juror equivocates about whether he or she has formed a fixed opinion," that person "should be stricken by the trial court" from the jury. *Taylor v. Commonwealth*, 61 Va. App. 13, 23 (2012).

Appellate review of such decisions is clear. An appellate court "defer[s] to the [trial] court's determination whether to exclude a prospective juror because that court was able to see and hear each member of the venire respond to questions posed." *Townsend*, 270 Va. at 329 (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)); *see Weeks v. Commonwealth*, 248 Va. 460, 475 (1994). "Juror impartiality is a question of fact . . . ." *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). In light of these principles, "the decision to retain or exclude a prospective juror 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Lovos-Rivas*, 58 Va. App. at 61 (quoting *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001)).

- 3 -

*See generally Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (explaining that the "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie" (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015))).

"Through the voir dire process, 'the trial judge must probe the conscience and mental attitude of the prospective jurors to ensure impartiality.'" *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019) (emphasis omitted) (quoting *Griffin*, 19 Va. App. at 621). A prospective juror is disqualified if that person has a "fixed" "opinion . . . which repels the presumption of innocence in a criminal case" and if the juror already believes the defendant is guilty. *See Huguely*, 63 Va. App. at 120-21 (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)). But a prospective juror can serve on the jury if that person "can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *See Ramos*, 71 Va. App. at 157 (quoting *Griffin*, 19 Va. App. at 621).

With these legal principles in mind, we turn to the particular jurors at issue here. Street argues that the trial court erred by denying his motions to strike Jurors 10 and 21 for cause because their answers during voir dire did not demonstrate their impartiality.[2] Juror 10's son had been murdered, and the same prosecutor handled the resulting criminal case. In addition, both prospective jurors were connected to the victim through tangential familial relationships.

---

[2] Street does not contend that the prospective jurors were improperly rehabilitated. *See generally Northcraft v. Commonwealth*, 78 Va. App. 563, 589-90 (2023) (considering whether the trial court improperly rehabilitated a prospective juror through questioning). Similarly, he does not argue that either juror should have been disqualified per se based on a familial relationship with the victim. In Virginia, a prospective juror "who is related, within the ninth degree of consanguinity or affinity," to a party or the victim is disqualified. *See Gray v. Commonwealth*, 226 Va. 591, 593 (1984). Neither Juror 10 nor Juror 21 was a blood relation of the victim, so they were not related by consanguinity. *See Brooks v. Commonwealth*, 41 Va. App. 454, 460 (2003). Similarly, neither prospective juror had a spouse that was related to the victim by blood, so they were not related by affinity. *See id.* at 460-61.

Regarding Juror 10, he told the court that he knew the Commonwealth's attorney in this case. The suspect in his son's murder had recently been prosecuted, and the same Commonwealth's attorney handled that case. The court asked if it would "cause [him] to be biased in favor or against the defendant," and Juror 10 replied that it would not. Defense counsel proffered that the suspect for Juror 10's son's murder had been found not guilty. Both attorneys proffered that Juror 10 had served on a jury pool a few weeks prior. According to the defense, he was ultimately struck for cause. The Commonwealth's attorney noted that the answers Juror 10 gave in the two voir dires differed.

During the voir dire in this case, Juror 10 also stated that he knew the victim's grandfather because he had married Juror 10's cousin. The court asked whether that relationship would prevent him from "giv[ing] a fair trial to both the Commonwealth and the defense," and Juror 10 said it would not. In response to questioning from defense counsel, Juror 10 explained that although he considered the man "family," he had not seen him in "[m]ore than five years." Throughout, Juror 10 remained steadfast in his responses that he could be impartial and unbiased.

As for Juror 21, she stated during voir dire that she knew the victim's grandfather and the victim's sister. Juror 21 knew the grandfather from when they were neighbors. In addition, the victim's sister and Juror 21's nephew have a child together. Juror 21 explained that she and the sister were not friends but they saw each other on weekends when the sister dropped off or picked up the child. She noted that she attended the custody exchange on weekends only because it was "ordered that someone else [be] there." When the court asked if the relationship would prevent her from being impartial, Juror 21 initially replied, "Possibly because we have a mutual friend." The trial court then explained that neither the victim's grandfather nor sister were expected to testify and asked Juror 21 if she would "be able to base [her] decision solely on

the testimony of witnesses here in court today." That time, Juror 21 responded that she could. When asked by the court, she also said she would not be biased for or against either party. Defense counsel further asked Juror 21 if her relationship with the victim's sister would affect her ability to "give" Street "a fair trial." She responded that it would not.

The court asked the jury panel generally whether anyone had a bias or prejudice for or against Street, and no one responded affirmatively. Also, when asked, the venire members replied that they understood the defendant was presumed innocent. Similarly, the court asked if "everybody . . . underst[ood] that it's the Commonwealth's burden to prove the case beyond a reasonable doubt," and the venire members unanimously responded affirmatively. When the trial court asked if "anyone know[s] any reason whatsoever that you could not give a fair and impartial trial to both the Commonwealth and the accused based solely on the law and evidence in this case," no one responded.

Critical to our analysis, in determining whether the trial court erred by not excluding Juror 10 or 21, this Court considers the "entire voir dire, not merely isolated statements." *See Ramos*, 71 Va. App. at 157 (emphasis omitted) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 413 (2002)). The voir dire, when viewed in its entirety, does not establish that Jurors 10 or 21 held firm opinions of such "fixed character which repel[ed] the presumption of innocence." *See Justus*, 220 Va. at 976 (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). The record contains no evidence to suggest that either prospective juror held an opinion that would cause bias or prejudice against Street. *See Hopson v. Commonwealth*, 52 Va. App. 144, 152 (2008). Both challenged jurors stated their abilities to serve as unbiased jurors. Similarly, they each expressed an understanding of the Commonwealth's burden of proof and the defendant's presumption of innocence. Although some answers provided by Juror 21 "were interpreted by the appellant as equivocal, the larger context provided by the record supports the trial court's

conclusion that [she] . . . believed that [she] could be impartial and fair." *See Goodwin v. Commonwealth*, 71 Va. App. 125, 138 (2019). "[A] trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be str[uck]." *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (second alteration in original) (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007)).

For these reasons, we hold that, when viewed in context of the entire voir dire, the portions Street relies on do not compel the conclusion that Juror 10 or Juror 21 was unable to decide this case fairly and impartially.[3]

Finally, we reject Street's reliance on the principle in *Breeden v. Commonwealth*, 217 Va. 297, 298 (1976), that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." There was no reasonable doubt in this case. Here, Jurors 10 and 21 ultimately were unequivocal about their abilities to serve as impartial jurors. *See Huguely*, 63 Va. App. at 125 ("[C]ontextual determinations must be made by the trial court during voir dire." (emphasis omitted)). Moreover, the judge clearly analyzed the answers and demeanor of the prospective jurors in this case because he ultimately granted four of Street's motions to strike certain jurors for cause.

The trial court's challenged findings about the impartiality of the two jurors are supported by the record. Accordingly, the decisions to deny Street's motions to strike Jurors 10 and 21 for cause were not plainly wrong, and the court did not abuse its discretion.

---

[3] The Commonwealth suggests Street's argument that Juror 10 was biased due his relationship with the victim's grandfather is procedurally barred because he did not rely on this fact when making his motion to strike Juror 10 for cause. *See* Rule 5A:18; *Griffin*, 19 Va. App. at 621 (noting the trial court is responsible for ensuring that jurors are not biased). In light of the merits review necessitated by the murder of Juror 10's son, we conclude that the best and narrowest approach involves a review of the merits of this argument as well. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018).

## II.  Sufficiency of the Evidence

In reviewing the sufficiency of the evidence to support a conviction, this Court will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it.  *See Hogle v. Commonwealth*, 75 Va. App. 743, 752-53 (2022).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Id.* at 753 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).  When conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Barney*, 302 Va. at 97 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  In the end, "[t]he only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alterations in original) (quoting *Barney*, 302 Va. at 97).

It is also the function of the trier of fact to determine the credibility of witnesses and the weight afforded their testimony.  *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016).  And when evaluating the sufficiency of the evidence, the reviewing court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).  "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty."  *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Street argues that the Commonwealth failed to prove both that he was the assailant and that he acted with malice. We consider those issues in turn, applying these well-established principles.

A. Identification

The identification of Street as the criminal actor was based on the testimony of two eyewitnesses, Webb and Brown.[4] The testimony of these witnesses taken as a whole sufficiently proves Street's identity as the shooter.

Webb testified that she saw Street and Waters having an argument. She knew Street and readily identified him. Webb was about sixteen feet away from the arguing pair. The victim approached, and Webb turned away. While she had her back turned to them, she heard the gunfire.

Brown, a neighbor, testified that he was watching from his porch "three doors down" as a man and a woman argued. He saw the victim come outside, intervene, and try to hit the man. According to Brown, the man who was arguing with the woman then shot the victim. Brown explained that he could not see the shooter well enough to identify him but he was clearly able to see that the man was the shooter.

It is axiomatic that "[a]t trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances" within the strict parameters of such review. *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 250 (1992)).

---

[4] Waters and her adult daughter were present at the time of the shooting but were not called as witnesses. No physical evidence tied Street to the crimes.

Here, Street does not challenge Webb's identification of him as the person who was outside arguing with Waters. Instead, he emphasizes that Webb did not see the actual shooting because she had turned away when it happened. In addition, Street contends that Brown's identification of the man who was arguing as the shooter was unreliable since his view "was demonstrably compromised by distance and lighting."[5] Street suggests that each witness's assessment falls short of identifying him as the criminal actor.

The totality of the circumstances, however, sufficiently proved that Street was the shooter. *See Cuffee*, 61 Va. App. at 366. The jury credited both Webb's identification of Street as the man arguing and Brown's identification of the man arguing as the shooter. *See Moseley*, 293 Va. at 465 (holding that the evidence was sufficient to support the fact finder's rejection of the hypothesis of innocence "that someone else was the criminal agent"); *Brown*, 37 Va. App. at 523 ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). Those findings are not plainly wrong, and the evidence supports the jury's conclusion that Street was in fact the shooter.

## B. Malice

Street also argues that the Commonwealth failed to prove he acted with malice because the evidence supports the alternative theory that he acted in the heat of passion based on

---

[5] In his sufficiency argument, Street cites the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), as relevant to the analysis of the credibility of the identification testimony. The Supreme Court of Virginia, however, has clarified the difference between an analysis of the admissibility of identification evidence, which rests on due process considerations, and "evaluating the identification within a sufficiency matrix." *Sample v. Commonwealth*, 303 Va. 2, 16 (2024). Once identification evidence is admitted, it is evaluated under the same standard of review applicable to assessing the sufficiency of the Commonwealth's case as a whole. *See id.* To the extent any of our previous cases apply the *Neil v. Biggers* factors when analyzing the sufficiency of the evidence to support identification testimony, *Sample v. Commonwealth*, 303 Va. at 16, controls.

- 10 -

reasonable provocation. He emphasizes the evidence that the victim intervened in a domestic altercation and tried to punch him. Street highlights the fact that two firearms were found on or near the victim's body.

A conviction for second-degree murder requires that the Commonwealth prove malice. *See Wood v. Commonwealth*, 66 Va. App. 123, 131 (2016). In contrast, an intentional killing done without malice in the heat of passion is the lesser offense of voluntary manslaughter. *See, e.g.*, *Dandridge v. Commonwealth*, 72 Va. App. 669, 681-82 (2021).

Whether violence occurred in the heat of passion and due to a reasonable provocation is generally a question for the fact finder. *See Avent v. Commonwealth*, 279 Va. 175, 201 (2010); *Dandridge*, 72 Va. App. at 682. "Heat of passion is a defense based on a defendant's lack of malice." *Washington v. Commonwealth*, 75 Va. App. 606, 619 (2022). "It 'refers to the *furor brevis* which renders a [person] deaf to the voice of reason.'" *Id.* (alteration in original) (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "'[W]hen provocation reasonably produces fear' or anger, causing 'one to act on impulse without conscious reflection,' no malice exists." *Id.* (alteration in original) (quoting *Rhodes*, 41 Va. App. at 200). In other words, heat of passion and malice are mutually exclusive.

Unlike heat of passion, "[m]alice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020)). Further, "[m]alice may be inferred 'from the deliberate use of a deadly

weapon unless, from all the evidence,' there is reasonable doubt as to whether malice existed." *Avent*, 279 Va. at 201-02 (quoting *Smith v. Commonwealth*, 239 Va. 243, 263 (1990)).

In this case, the jury was properly instructed on malice and found beyond a reasonable doubt that Street acted with malice and not in the heat of passion. This factual determination is supported by the record and necessarily included consideration of the circumstances surrounding the shooting. In short, the evidence supports the inference drawn by the jury that Street responded to non-deadly force by shooting at the victim at close range seven to eight times, ultimately killing him. *See Garrick*, 303 Va. at 182 ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not."). Although investigating police officers recovered a pistol near the victim's body and a revolver from his pants pocket, no evidence indicates that the victim brandished either of those firearms. In contrast, Street fired three to four times at the victim and started to walk away. He then turned around and fired three or four more times at the victim, who was already on the ground. He shot the victim a total of four times. Street's intentional acts support the finding that he acted deliberately rather than impulsively in the heat of passion. *See Williams v. Commonwealth*, 64 Va. App. 240, 253 (2015). In these circumstances, Street's intentional use of a deadly weapon supports the reasonable inference that he acted with malice.

CONCLUSION

The trial court did not err by denying the motions to strike Jurors 10 and 21 for cause. In addition, the evidence was sufficient to prove Street was the shooter and that he acted with malice. For these reasons, we affirm the convictions.

*Affirmed.*